UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                 :

CHAREÉ CAREY,                        :

                   Plaintiff,    :

                                  :            23 Civ. 3061 (LGS)

      -against-                    :

                                  :        **OPINION & ORDER**

NEW YORK STATE DEPARTMENT   :
OF HEALTH, et al.,              :

                   Defendants.  :

------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Chareé Carey ("Plaintiff" or Carey) brings this employment discrimination

action against Defendant New York State Department of Health ("DOH"), and its employees,

Defendants Danny Vazquez, Michael Shelhamer, Rick Boettcher, Joshua Vinciguerra and John

and Jane Doe (the "Individual Defendants"). The Second Amended Complaint ("SAC") alleges

sex discrimination, hostile work environment and retaliation in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII") against DOH,[1] and in violation of the New York State Human

Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") against the

Individual Defendants. Defendants filed motions for summary judgment on all claims.[2] For the

following reasons, the motions are granted in part and denied in part.

---

[1] The parties agreed by stipulation to withdraw Plaintiff's age discrimination and age-related
hostile work environment claims and to terminate as a party in this action Defendant James
McDonald, Commissioner of the New York State Department of Health.

[2] Two summary judgment motions are before the Court. First, DOH and Vinciguerra moved for
summary judgment on the Title VII claims pleaded against DOH (Counts One through Three)
and the NYSHRL/NYCHRL claims pleaded against Vinciguerra (Counts Five through Ten). *See*
Dkt. No. 129. Second, Shelhamer, Vazquez and Boettcher moved for summary judgment on the
NYSHRL/NYCHRL counts asserted against them (Counts Five through Ten). *See* Dkt. No. 125.

I.     **BACKGROUND**

The following facts are drawn from the parties' Rule 56.1 statements and related submissions. The facts are undisputed or based on record evidence, drawing all reasonable inferences in favor of Plaintiff as the non-moving party. *See N.Y. State Teamsters Conf. Pension & Ret. Fund v. C & S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022).

Plaintiff is a woman. The Bureau of Narcotic Enforcement ("BNE") is a program administered by DOH. BNE investigates diversion of controlled substances, and licenses and inspects entities that handle controlled substances. BNE hired Plaintiff as an Investigative Specialist 1 (or an "Investigator") in June 2021. She began work in mid-September and was assigned to BNE's Metropolitan Area Regional Office ("MARO") in New York City. The responsibilities of an Investigator include conducting inspections, fieldwork and managing intake and inspection reports. All new BNE Investigators undergo a year-long probationary period. Prior to joining BNE, Plaintiff spent two decades working in federal law enforcement, where her most recent role was a supervisory one.

Within BNE, Investigators report to Senior Investigators. Senior Investigators report to the Chief Investigator, and the Chief Investigator reports directly to BNE's Director. Upon hire, Plaintiff's immediate supervisor at MARO was Senior Investigator Defendant Danny Vazquez, who reported to BNE's Chief Investigator in Albany, Defendant Michael Shelhamer. Shelhamer, in turn, reported to Albany-based BNE Director, Defendant Joshua Vinciguerra.

Both Vazquez and Shelhamer were part of Plaintiff's interview panel. Plaintiff was unanimously nominated by the interview panel, though she testified that Vazquez "seemed very curt" and "very negative" towards her and had a "stern face" during her interview. In a post-interview phone call, Plaintiff told Shelhamer that she "had some concerns about [Vazquez] and

the way he behaved in the interview . . . [and that she] felt that he had a problem with [her]." After Plaintiff was hired, Vazquez allegedly told other BNE employees to "watch out for [Plaintiff]" and that "[s]he's going to be a problem. . . . This is a step down for her."

BNE also hired a male Investigator, Crispin Moore, around the same time that Plaintiff was hired. Moore began work in August 2021, after working for a different office within DOH. Both Plaintiff and Moore received similar onboarding and training, which Plaintiff alleges was deficient. Neither Plaintiff nor Moore received a performance plan outlining their job duties, as required by the probation policy. Moore concurred that proper training for new Investigators "did not exist." He felt "[they] were making things up as [they] went along." When Moore needed help, he had to "take the initiative to reach out" to Vazquez. Moore considered the lack of proper training part of BNE's "culture."

### A.    Offending Remarks and Complaints to Shelhamer

On September 16, 2021, Plaintiff's first day of field training, Plaintiff asked Vazquez about the dress code. Vazquez told Plaintiff in a "sarcastic tone" that female investigators should "wear pumps" to the office despite BNE having no dress code. Plaintiff considered the remark sexist and reported it to Shelhamer on October 8, 2021. Plaintiff told Shelhamer, "this needed to stop. [Vazquez] was creating a hostile work environment . . . . Enough was enough." Plaintiff also expressed concerns about Vazquez not showing her necessary procedures and reminded Shelhamer about her concerns prior to accepting the position. Plaintiff stated that Vazquez "had issues with women" and "maybe it's cultural." Shelhamer responded that he thought Vazquez was intimidated by Plaintiff and that "it's like when two guys slap their dicks on the table and whose dick is bigger." Shelhamer took no action following the conversation.

On October 21, 2021, Shelhamer informed Vazquez that the GPS system in Plaintiff's state-issued vehicle showed her driving 90 miles per hour and instructed Vazquez to ask her

about it.  Vazquez and Shelhamer were both aware that the GPS system was unreliable and that false readings had occurred in the past.  Vazquez addressed the alert with Plaintiff; when she explained that she was stuck in traffic at the time and could not have been speeding, Vazquez told her, "calm down, girl!"  Plaintiff viewed the remark as sexist and inappropriate.  Vazquez did not tell Plaintiff that the system was unreliable and had given false readings in the past, and appeared upset when she did not admit to speeding.  Plaintiff reported the "calm down, girl!" comment to Shelhamer, but he again took no action.

On January 14, 2022, Vazquez sent a draft of Plaintiff's first probationary evaluation ("Probation Report 1") to Shelhamer.  The draft recommended that Plaintiff's probation continue.  On January 19, 2022, Shelhamer sent a revised version back to Vazquez.  Shelhamer's revisions were largely organizational.  On January 20, 2022, Shelhamer sent the revised draft to BNE Director, Defendant Vinciguerra.  The probation report form requires evaluators to rate employees in applicable categories on a scale of one to five, with one being "Unsatisfactory," two, three or four being "Effective," and five being "Highly Effective."  Vazquez rated Plaintiff a two, or "Effective," for each applicable category, with the following final remark:

> Inv. Carey is a quick learner, however she requires continuous oversight as she tends to overstep her authority and current knowledge base in order to complete a task.  She is resistant to supervision, citing her prior experience in conducting investigations and not needing direction at the prior position.  Inv. Carey demonstrates challenges in understanding, acknowledging, and accepting bureau operations.  Inv. Carey appears to be challenged in accepting her new role as an entry level Investigator within BNE.

On January 21, 2022, Plaintiff again complained to Shelhamer about Vazquez creating a hostile work environment and holding her to a different standard than other Investigators.  Plaintiff explained that Vazquez had been calling, emailing and texting her daily to re-request information that she had previously submitted and that it was causing her undue stress.

Shelhamer responded that he did not know if this was a "Carey thing, a Vazquez thing, or a Carey/Vazquez thing." Plaintiff stated that "she [couldn't] do this anymore" and that Vazquez was retaliating against her for having complained to Shelhamer previously. When Plaintiff identified witnesses, Shelhamer said he did not know if he would speak to them, and that he was contemplating what to do next.

On January 24, 2022, Vinciguerra requested further detail about the reasoning in draft Probation Report 1 sent by Shelhamer a few days prior. At that point, Vinciguerra was not yet aware of Plaintiff's January 21 complaints.

On January 25, 2022, Plaintiff met with Vazquez in his office. Plaintiff sought guidance on using an internal case management and reporting system and a disagreement ensued. The office door was closed, but witnesses heard raised voices and that "[Plaintiff's] voice was more elevated." Both Plaintiff and Vazquez reported the incident to Shelhamer by email. Plaintiff reported that Vazquez had refused to answer her questions and ended the meeting with "I don't have anything more to say to you, honey," which she viewed as sexist. Vazquez reported insubordination, stating that Carey called him a "ball buster," that she was resistant to feedback and that she "saw everything as [Vazquez] picking [on] her." The day after this incident, Vazquez recommended for the first time that Plaintiff's termination be "seriously considered."

On January 26, 2022, Shelhamer forwarded Plaintiff's email to Vinciguerra. The next day, Shelhamer filed complaints on behalf of both Plaintiff and Vazquez with the Office of Employee Relations ("OER"). Shelhamer forwarded drafts of the complaints to Vinciguerra for his review before sending them to OER. Shelhamer had not reported Carey's previous complaints to OER or Vinciguerra. On January 28, 2022, Shelhamer emailed Vazquez and

Carey and said that, after speaking with both of them, he believed their relationship was severely strained and that a third person should be present for any future meetings.

Following the January 25, 2022, incident, Vazquez revised Plaintiff's first probationary report. Where he had previously rated her a two, or "Effective," for Interpersonal Relations, Vazquez revised the rating to a one, or "Unsatisfactory." He wrote, "Inv. Carey needs to further develop her ability to work with coworkers and accept direction and advice." Vazquez also revised the final remark:

> During her evaluation period Inv. Carey has exhibited difficulty with her new responsibilities as an entry level Investigator and struggled with the transition. She is unwilling to accept bureau methods of performing Investigative task. During conversations to provide remediation and direction or discuss her work performance, she exhibits defensiveness and indignation. Her relationship with coworkers is strained and tenuous at best as a result of her unwillingness to accept help. There is a genuine concern that her antagonistic behavior has proven to be disruptive and interfering with the normal operation and/or morale of the unit.

Despite these revisions, Vazquez did not change his ultimate recommendation: the report recommended continuing probation, not termination.

Plaintiff received Probation Report 1 on February 10, 2022. Plaintiff alleges that the evaluation was unfair and contained false statements about her character and conduct in retaliation for her complaints about Vazquez. Plaintiff also alleges that the report violated BNE policy, as she never received a performance plan outlining her job duties. Plaintiff subsequently requested a performance plan from the Bureau of Employee Relations ("BER") but did not receive one.

### B.    Sexual Harassment and Workplace Violence Reporting

On February 10, 2022, following her performance evaluation, Carey emailed her resignation to Shelhamer. Plaintiff stated that she could "no longer deal with the hostile work environment and the emotional toll." The same day, Plaintiff filed a formal complaint for

discrimination and retaliation with OER.  Plaintiff reported receiving a negative performance evaluation in retaliation for complaining about Vazquez's discrimination and harassment.  On February 11, Carey also filed a workplace violence report with BER.

On February 14, 2022, Plaintiff emailed Shelhamer to rescind her resignation.  BER determined that Plaintiff had "resigned in an emotional response to an unfavorable evaluation," and officials promised to investigate her complaints.  Despite the retraction, Shelhamer tried to convince BER to accept Plaintiff's resignation.  Ultimately, Plaintiff remained in her position.  On February 16, 2022, OER issued a letter in response to the two complaints Shelhamer filed after the January 25, 2022, incident.  The letter stated that the "investigation regarding the complaint is complete and the allegations of sexual harassment were found to be substantiated," but imposed no discipline on Vazquez or Plaintiff.

On February 17, 2022, Shelhamer traveled to MARO and interviewed subordinates about the January 25, 2022, incident.  Following his interviews, Shelhamer concluded that Plaintiff was the "louder, more aggressive and argumentative" of the two during the altercation.  Plaintiff contests the thoroughness and reliability of the investigation.  On February 21, 2022, Shelhamer filed a workplace violence report with BER, citing Carey as the aggressor and Vazquez as the victim.

Ultimately, OER notified Plaintiff by letter dated July 25, 2022, that it had completed its investigation into her complaint of workplace discrimination and retaliation and found no violation of DOH's policy on discrimination and sexual harassment.  Plaintiff contests the thoroughness of this investigation and whether the case was indeed closed prior to her termination.  The BER workplace violence complaint filed by Shelhamer, listing Plaintiff as the aggressor, was never resolved.

### C. Additional Allegedly Retaliatory Treatment

Between October 2021 and July 2022, Plaintiff alleges that Defendants subjected her to additional retaliatory and disparate treatment, including denial of overtime, timekeeping scrutiny, removal of her state-issued vehicle, delaying her pistol permit, loss of privileges, increased and unrealistic volumes of data-entry work, unwarranted reprimands, a sham performance plan and, ultimately, her termination.

#### i. Denial of Overtime and Timekeeping Scrutiny

In October 2021, Vazquez denied Plaintiff's request for overtime. Plaintiff contends that she was discouraged from requesting "comp time" and told overtime required prior approval -- requirements she alleges were not imposed on male colleagues. The same month, Vazquez and Shelhamer also allegedly excluded Plaintiff from COVID-related overtime offered to other Investigators, including Moore. Although Defendants contend that the program was winding down, and that Moore was continuing his legacy overtime assignments from his prior position at DOH, Plaintiff alleges that Moore continued to receive such assignments, and that her exclusion was retaliatory.

On January 14, 2022, Vazquez sent an email to Plaintiff and Moore, stating that he had completed an audit of their submitted work hours, and reminding them both that the workweek was 37.5 hours and that overtime required prior approval. That same month, Vazquez texted Plaintiff concerning overtime from several months prior and requested that she provide additional details. Plaintiff perceived these audits as a form of retaliatory scrutiny.

#### ii. State-Issued Vehicle and Pistol Permit

Plaintiff also contends that Defendants recalled her state-issued vehicle in retaliation for her complaints. In late February 2022, Shelhamer directed Vazquez to pick up Plaintiff's vehicle and return it to Albany. Shelhamer cited a vehicle shortage as the rationale. At the time,

Shelhamer also lacked a state-issued vehicle due to the alleged shortage.  BNE expected Plaintiff to use public transportation for all investigations thereafter.  She viewed the removal of her vehicle as retaliatory and inconsistent with standard practice for BNE investigators, who routinely conduct fieldwork.  All other MARO investigators retained the use of their state-issued vehicles.

Plaintiff contends that Defendants interfered with her effort to obtain a state-issued pistol permit, a credential she alleges is standard among BNE Investigators.  Plaintiff qualified for a pistol the week of February 7, 2022.  But Vazquez, Shelhamer and Defendant Rick Boettcher -- Plaintiff's new supervisor, as of March 7, 2022, following her clashes with Vazquez -- never provided the Letter of Necessity required for Plaintiff to submit her permit application.  While Moore qualified for a pistol after Plaintiff, Moore was able to submit his permit application in or around April 2022.  Plaintiff asserts that her application was uniquely obstructed, and that the failure to provide the necessary documentation was retaliatory.

### iii.    Reassignment, Counseling and Loss of Privileges

Following her reassignment to the supervision of Senior Investigator Boettcher, Plaintiff was the only MARO investigator reporting to an Albany-based supervisor.  She alleges that Boettcher required her to submit unusually detailed daily activity reports and assigned a disproportionate amount of intake-related data entry reports that she considered clerical and inconsistent with her position.  Boettcher also asked the Licensing and Regulatory Compliance Manager to "keep him abreast" of any issues with Plaintiff's reports; the manager declined as outside of normal procedure.

Plaintiff further alleges that Boettcher imposed requirements not expected of other MARO investigators.  Around March 17, 2022, Boettcher began requiring Plaintiff to take her lunch break rather than working through lunch to leave early, and to request all time off using a

9

SharePoint form.  On March 23, 2022, during a video conference, Shelhamer and Boettcher issued two verbal reprimands, citing cell-phone policy violations and the January 25, 2022, incident with Vazquez.  One week later, Boettcher required Plaintiff to attend a training on "Respectful Communications in the Workplace."

On April 21, Boettcher, joined by a male investigator, reprimanded Plaintiff for an alleged IT policy violation.  The next day, Boettcher issued a counseling memorandum on the same topic, placing a copy in Plaintiff's personnel file.  Plaintiff asserts that she was uniquely counseled for such conduct.  On April 26, Shelhamer emailed the Bureau of Personnel Management with the subject "Assistance for Termination Process."

On May 9, Boettcher removed Plaintiff's telecommuting privileges and alternative work schedule, stating that her work "performance . . . didn't warrant telecommuting."  The same day, Boettcher conducted a case review asking Plaintiff to detail her entire day on April 6, 2022.  By late spring, Plaintiff's duties were largely limited to data entry, which she characterizes as a functional demotion.  She also alleges that she was assigned unrealistic volumes of work on May 17, June 1 and June 14.

In June 2022, all MARO investigators reported to the office to take new photographs. Plaintiff was not informed and alleges she was intentionally excluded from the photo session.

####     iv.    **Union Grievances, Performance Plan and Termination**

On March 15, 2022, Plaintiff's union filed a Step 1 grievance regarding the lack of a performance plan, inadequate training and the removal of her vehicle.  The grievance asked DOH to "cease and desist" from discrimination and retaliation and was served on Deputy Regional Director Michael O'Donnell.  On April 20, 2022, O'Donnell held a hearing and issued a Step 1 decision finding no discrimination or retaliation based on the February 10 probation report and removal of the vehicle.  The decision included a response from BNE management and

reflected O'Donnell's discussions with BNE management about Carey's claims.  On May 3, 2022, the union filed a Step 2 grievance, seeking the same cease-and-desist relief as the Step 1 complaint, and served it on Juliane Girard, the Director of BER.

On May 17, 2022, Boettcher issued a Performance Improvement Plan ("PIP") outlining eleven focus areas and associated deadlines.  Plaintiff requested clarification and a meeting, which she states did not occur.  Plaintiff asserts BNE failed to document her PIP progress, and the record contains no evidence that BNE ever advised Plaintiff that she was not meeting expectations or that termination was under consideration.

On May 25, 2022, the union served an Amended Step 1 grievance regarding the April 22 counseling memo alleging bullying by Boettcher.  O'Donnell held a Step 1 hearing on Plaintiff's grievance a few weeks later, which Plaintiff characterizes as a continuation of her first grievance.

In early June, Boettcher prepared Plaintiff's second Probation and Development Report ("Probation Report 2").  He rated Plaintiff a one, or "Unsatisfactory," in all applicable categories. Prior to signing the report, Vinciguerra edited Boettcher's draft addendum and asked that any additional "deficiencies" be included.  On June 8, Boettcher and Vinciguerra signed Probation Report 2 with the addendum and transmitted it to BER the next day.  The report states that Plaintiff's work product was unreliable and took longer than expected, she had to be counseled on policy violations, she "[h]as difficulty taking direction and advice from supervisors" and no improvement was observed after the PIP.  Plaintiff contests the accuracy of Probation Report 2 and alleges she was not provided a copy of the report, in violation of BNE policy.

On July 18, 2022, Boettcher and Vinciguerra signed a final Probation and Development Report ("Probation Report 3") recommending termination.  That afternoon, Vinciguerra met with Plaintiff and terminated her employment.  DOH policy requires a recommendation at least four

weeks prior to the requested termination date and generally contemplates service of the full probationary period. Plaintiff was terminated approximately three months before her probationary period ended.

## II.    STANDARD

### A.    Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party."[3] *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing to particular parts of materials in the record. *See* Fed. R. Civ. P. 56(c)(1)(A). In considering Defendants' motion for summary judgment, the Court is "required to accept all sworn statements by [Plaintiff] as to matters on which she [is] competent to testify, including what she did, what she observed, and what she was told by company managers." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019). "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried

---

[3] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

merely by making assertions that are based on speculation or are conclusory." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021). Courts must also "disregard all evidence favorable to [Defendants] that the jury is not required to believe," that is, "give credence to the evidence favoring [Plaintiff] as well as that evidence supporting [Defendants] that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Davis-Garett*, 921 F.3d at 46 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)).

In cases involving claims of discrimination or retaliation, "an extra measure of caution is merited in [granting] summary judgment . . . because direct evidence of discriminatory intent is rare and such intent must often be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc*., 445 F.3d 597, 603 (2d Cir. 2006). However, "the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to . . . other areas of litigation." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). "[T]rial courts should not 'treat discrimination differently from other ultimate questions of fact,'" *id*. (quoting *Reeves*, 530 U.S. at 148), and even in the discrimination context, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); *accord Uttarwar v. Lazard Asset Mgmt. LLC*, No. 24 Civ. 1085, 2025 WL 704278, at *1 (2d Cir. Mar. 5, 2025) (summary order).

As the Seventh Circuit famously stated, "[j]udges are not like pigs, hunting for truffles buried in the record." *Negotiatus Corp. v. Viola Inc.*, No. 24 Civ. 243, 2025 WL 416021, at *3 n.2 (S.D.N.Y. Feb. 6, 2025) (quoting *Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002)). The district court is not required to "conduct an exhaustive

13

search of the entire record before ruling on a motion for summary judgment." *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002); *accord Green v. Mount Sinai Health Sys., Inc.*, No. 17 Civ. 3999, 2019 WL 4392691, at *3 (S.D.N.Y. Sept. 12, 2019), *aff'd*, 826 F. App'x 124 (2d Cir. 2020).

    **B.**     *McDonnell Douglas* **Analysis**

    Title VII "claims are governed at the summary judgment stage by the burden-shifting analysis first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *accord Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 328 (S.D.N.Y. 2020). The same framework generally governs sex discrimination, hostile work environment and retaliation claims under NYSHRL. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 n.4 (2d Cir. 2014) ("The same standards [governing a plaintiff's *prima facie* burden under Title VII] apply to the plaintiffs' hostile environment claims arising under the NYSHRL"); *Gordon-Mallett v. Mount Sinai Hosps. Grp., Inc.*, No. 22 Civ. 1159, 2024 WL 1513910, at *9 (S.D.N.Y. Apr. 8, 2024) (explaining that the *McDonnell Douglas* framework governs sex discrimination, hostile work environment and retaliation claims under NYSHRL).

    Under the *McDonnell Douglas* framework:

> First, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff has established a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the disparate treatment. If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination.

*Buon v. Spindler*, 65 F.4th 64, 78-79 (2d Cir. 2023). To establish a *prima facie* case, a plaintiff must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference

of discrimination." *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024), *cert. denied*, 145 S.

Ct. 173 (2024). "[A] plaintiff's burden of establishing a *prima facie* case is not onerous." *Banks*

*v. Gen. Motors, LLC*, 81 F.4th 242, 270 (2d Cir. 2023). But even though a plaintiff's burden is

"de minimis," it is not "somehow non-existent." *Krul v. DeJoy*, 705 F. Supp. 3d 5, 49 (N.D.N.Y.

2023), *appeal dismissed*, No. 24-314 (2d Cir. June 3, 2024).

## III.  DISCUSSION

### A.  Federal Discrimination Claims

The SAC alleges that Plaintiff faced discrimination, a hostile work environment and

retaliation due to her gender in violation of Title VII, ultimately resulting in her termination.

Plaintiff's hostile work environment claims fail because the record does not support an inference

that Defendants' alleged misconduct was motivated by sex -- or any other protected

characteristic. Plaintiff's sex discrimination and retaliation claims survive but are narrowed.

#### i.  Sex Discrimination

Defendants' motion for summary judgment on the sex discrimination claim under Title

VII is granted in part and denied in part. Plaintiff asserts a host of adverse employment actions,

ultimately culminating in her termination. At the first step of the *McDonnell Douglas* analysis,

Plaintiff must "proffer[] admissible evidence show[ing] circumstances that would be sufficient to

permit a rational finder of fact to infer a discriminatory motive." *Banks*, 81 F.4th at 272.

Regardless of the source of the inference, courts are "decidedly not interested in the truth of the

allegations against plaintiff [but rather] what *motivated* the employer." *McPherson v. N.Y.C.*

*Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006); *accord Bjorklund v. Golub Corp.*, 832 F.

App'x 97, 98 (2d Cir. 2021) (summary order). To meet her *prima facie* burden of showing

discriminatory intent Plaintiff primarily relies on two theories: discriminatory remarks made by

Vazquez and Plaintiff's disparate treatment compared to Moore. While the former is

insufficient, questions of material fact exist as to whether a jury could find sex discrimination

based on disparate treatment.

### a. Remarks by Vazquez

While Vazquez stopped directly supervising Plaintiff in early March and was not

involved in her ultimate termination, Plaintiff argues that because his negative evaluations were

included in her termination package, Vazquez's discrimination "tainted" the termination decision

under a "cat's paw" theory.  *See Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 51 (2d Cir.

2025) (explaining liability can attach where a supervisor with no discriminatory intent takes

adverse action based on influence of a biased subordinate).  Plaintiff points to three comments by

Vazquez as evidence of sex discrimination -- telling Plaintiff that female investigators should

"wear pumps" (Sept. 16, 2021), saying "calm down, girl!" (Oct. 21, 2021) and calling her

"honey" (Jan. 25, 2022).  These three remarks do not support a reasonable inference of

discriminatory intent.

Under Second Circuit law, isolated "stray remarks, even if made by a decisionmaker, do

not constitute sufficient evidence to make out a case of employment discrimination . . . [unless]

other indicia of discrimination are properly presented."  *Danzer v. Norden Sys., Inc.*, 151 F.3d

50, 56 (2d Cir. 1998); *accord Naumovski v. Norris*, 934 F.3d 200, 215-16 (2d Cir. 2019)

(characterizing, "your problem is that you're a single female in your mid-30s" as "precisely the

sort of 'stray remark' that is insufficient to support an inference of discriminatory intent")[4]; *see*

*Johnson v. Schmid*, 750 F. App'x 12, 17-18 (2d Cir. 2018) (summary order) (indicating "Are you

---

[4] While many of these cases stem from 42 U.S.C. § 1983 discrimination claims rather than Title
VII claims, the former "parallel[s] Title VII discrimination claims in many respects," including
through the use of the *McDonnell Douglas* framework.  *Naumovski*, 934 F.3d at 212-14.  The
differences in the causation standards between the two emerge at the at the "third step of the
*McDonnell Douglas* analysis," which is not addressed here.  *Id*. at 14.

threatening me boy?" said to an African-American, without more, is a stray remark). Indicia of discrimination include when the remarks "were (1) made repeatedly, (2) drew a direct link between gender stereotypes and the adverse employment decision, and (3) were made by supervisors who played a substantial role in the decision to terminate." *Naumovski*, 934 F.3d at 216 n.47.

Against this backdrop, Vazquez's statements do not support an inference of discriminatory intent. The three comments -- "wear pumps," "calm down, girl!" and "honey" -- were isolated, and the record does not tie any gender stereotype implicit in them to Vazquez's allegedly discriminatory conduct (i.e., failure to train, denial of overtime, hours scrutiny or Plaintiff's negative review). Vazquez's role in Plaintiff's termination was limited and temporally remote. The "pumps" remark preceded Probation Report 1 by months and the termination by nearly a year. Vazquez stopped supervising Plaintiff in early March; Boettcher and Vinciguerra prepared the subsequent probation reports and spearheaded the termination decision. Given these circumstances, the remarks are insufficient to establish a *prima facie* case of discriminatory intent. *See Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (explaining that the probative value of discriminatory remarks depends on their temporal and contextual proximity to the adverse action); *Bentley-Ammonds v. Northwell Health, Inc.*, No. 21 Civ. 835, 2022 WL 893716, at *2 (2d Cir. Mar. 28, 2022) (finding remarks made three months before termination by a non-decisionmaker insufficient); *Dixon v. Int'l Fed'n of Accts.*, 416 F. App'x 107, 109-10 (2d Cir. 2011) (summary order) (finding an isolated derogatory remark by a non-decisionmaker insufficient).

Plaintiff's additional indicia of discriminatory intent do not alter the analysis. Plaintiff points to her perception of interview hostility, the equal firearms-expertise scores for her and

Moore despite his lack of prior experience and Vazquez's apparent opposition to her hiring. But this evidence cuts both ways. That the "same actor" participated in Plaintiff's hiring weakens any inference of discriminatory motive, though it is not dispositive. *See Watt v. N.Y. Botanical Garden*, No. 98 Civ. 1095, 2000 WL 193626, at *7 (S.D.N.Y. Feb. 16, 2000) ("It is suspect to claim that the same manager who hired a person in the protected class would suddenly develop an aversion to members of that class."). Although the "same actor" inference can be rebutted, *Feingold v. New York*, 366 F.3d 138, 154-55 (2d Cir. 2004), the record shows Vazquez ranked Plaintiff ahead of all other interviewees and gave her a score of thirty out of thirty-two possible points -- three points higher than Moore. *See Allen v. Padilla*, No. 22 Civ. 9523, 2025 WL 587085, at *9 (S.D.N.Y. Feb. 24, 2025) ("[T]he individual who made the decision to let the plaintiff go was the same person who had hired him, which strongly suggest[ed] that invidious discrimination was unlikely"); *cf. Schnabel v. Abramson*, 232 F.3d 83, 87, 91 (2d Cir. 2000) (applying the same-actor inference to age discrimination claims, which are analyzed "under the same framework as claims brought pursuant to Title VII"). These facts do not transform Vazquez's statements from "stray remarks" into evidence from which a reasonable juror could find discriminatory intent. *See Danzer*, 151 F.3d at 56.

### b. Comparison to Moore

Plaintiff also relies on disparate treatment to establish a *prima facie* inference of discrimination. Plaintiff identifies Moore, a male investigator interviewed by the same hiring panel and who started work around the same time, and points to specific instances in which he allegedly received more favorable treatment including the pistol-permit process, the recall of Plaintiff's state vehicle, overtime opportunities, assignment to desk-duty/data-entry work and aspects of probation/discipline. Drawing all reasonable inferences in Plaintiff's favor, a

reasonable jury could find Moore "similarly situated" to Plaintiff, permitting an inference of discrimination from the disparate treatment between the two Investigators -- during specific periods.

Comparator evidence supports an inference of discrimination only if the comparator is "similarly situated to the plaintiff in all material respects." *Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022); *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493-95 (2d Cir. 2010). An employee is "similarly situated . . . if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ruiz*, 609 F.3d at 493-94. "The determination that two acts are of comparable seriousness requires -- in addition to an examination of the acts -- an examination of the context and surrounding circumstances in which those acts are evaluated." *Radwan*, 55 F.4th at 132. "Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury." *Id*. As the comparator analysis hinges on context, each time period is analyzed separately.

### i.    Conduct Prior to January 25, 2022

Plaintiff's claims based on conduct prior to January 25, 2022, are dismissed. While a reasonable jury could find that Plaintiff and Moore were similarly situated, the record does not show Moore receiving materially better treatment. To the extent the two Investigators were treated differently, Plaintiff fails to show pretext under the third step of *McDonnell Douglas*.

As to training, performance plans, routine overtime administration and timekeeping, the evidence reflects parity. Both Plaintiff and Moore described training as inadequate, neither received a performance plan and Moore testified he had to "take the initiative to reach out" for help. Both received "pushback" on overtime for annual training, and both received overtime pre-

approval reminders and timekeeping audits.  Plaintiff's subjective belief that Moore received

better treatment is insufficient to meet her burden regarding conduct prior to January 25, 2022.

COVID-related overtime is the only identified material difference prior to January 25,

2022, and Plaintiff fails to show that Defendants' explanation was pretextual.  Under step two of

*McDonnell Douglas*, Defendants articulated a legitimate, non-discriminatory reason for this

disparity: Moore continued a legacy COVID assignment from his prior DOH role while the

department was winding down the program for new Investigators.  *See Buon*, 65 F.4th at 78-79.

The burden therefore shifts back to Plaintiff to show that justification is false or pretextual under

step three.  *Id*.  But Plaintiff fails to do so.  She did not carry over legacy assignments from her

prior role and offers no evidence that this explanation for the disparate treatment between the

two probationary investigators is pretextual.  Accordingly, Plaintiff's sex discrimination claims

based on conduct prior to January 25, 2022, fail.

ii.    **Conduct Tied to January 25, 2022, Incident**

Plaintiff argues that changes to her probationary evaluations related to the January 25,

2022, altercation with Vazquez show discrimination.  But for actions expressly tied to the

January 25, 2022, incident -- such as subsequent revisions to Plaintiff's probationary report --

Moore is not an apt comparator.  Moore did not engage in comparable conduct and therefore is

not "similarly situated . . . in all material respects."  *Ruiz*, 609 F.3d at 493-95.  Even assuming

the revisions qualify as adverse actions and that Moore is an adequate comparator, Defendants

have articulated a non-discriminatory reason: the incident itself.  Her supervisors revised her

"Interpersonal Relations" score and noted Plaintiff's challenges accepting direction.  This shifts

the burden back to Plaintiff, who proffers no evidence of pretext.  The changes relate to

interpersonal conflict and directly followed Plaintiff's confrontation with her supervisor.  As

such, even viewing the facts in the light most favorable to Plaintiff, the record lacks evidence from which a reasonable jury could find the proffered explanation (insubordination) pretextual. Any discrimination claim premised on Plaintiff's negative review is therefore dismissed.

Any claim of discrimination premised on the *initial draft* of Probationary Report 1 -- the version circulated prior to the January 25th confrontation -- fails as a matter of law. To be adverse under Title VII, an action must involve some harm to a plaintiff's "employment terms or conditions," or, in other words, leave them "worse off." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355-56 (2024); *see Banks*, 81 F.4th at 269-71 (listing examples of adverse actions, such as termination, demotion, less-distinguished title, material loss of benefits and significantly diminished responsibilities). Under this standard, the initial draft of Probationary Report 1 does not amount to an adverse action; the record contains no evidence that Plaintiff was "left worse off" by this draft report, which Defendants edited significantly following her confrontation with Vazquez and prior to finalization. Any claim of discrimination based on this preliminary draft is also dismissed.

### iii.    Conduct After January 25, 2022

Plaintiff's remaining post-January 25 allegations raise questions of material fact precluding summary judgment. The alleged adverse actions include: (1) removal of Plaintiff's state-issued vehicle, (2) restriction to desk duty and increased data entry, (3) removal of her alternate work schedule, (4) withholding Plaintiff's pistol-permit paperwork and (5) her ultimate termination. As discussed above, courts assess adverse actions under Title VII by considering if the conduct involves "some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 355-56; *Banks*, 81 F.4th at 269-71 (listing examples of adverse actions, such as termination, demotion, less-distinguished title, material loss of benefits and significantly

diminished responsibilities).  On this record, a reasonable jury could find each of the listed items satisfies that standard -- the vehicle recall and pistol-permit Letter of Necessity implicate privileges tied to core investigative duties; the desk-duty/data-entry restriction and alternate work schedule revocation reflect significantly diminished responsibilities and loss of a benefit; and termination goes without saying.  By contrast, other post-January events -- e.g., reassignment to Boettcher, counseling memoranda, heightened reporting, Probation Reports 2 and 3, the PIP and internal emails initiating termination --  are not independent adverse actions but provide relevant context for the foregoing items and for pretext.  *See Muldrow*, 601 U.S. at 355-56; *Banks*, 81 F.4th at 269-71.  Whether Moore was "similarly situated in all material respects" is a question for the jury.  *See Ruiz*, 609 F.3d at 493-95; *Radwan*, 55 F.4th at 132.

Viewing the record in the light most favorable to Plaintiff, a reasonable jury could find Defendants' stated justifications pretextual.  Under step two of *McDonnell Douglas*, Defendants proffered non-discriminatory reasons for some events.  But the record shows shifting explanations and inconsistent conduct.  For the vehicle recall, Defendants cited a long-standing fleet shortage but contemporaneously asserted that Plaintiff "surrendered" her vehicle because she no longer wished to do field work.  For the pistol permit, the record reflects no clear explanation for why Plaintiff never received the paperwork necessary to apply, while Moore submitted his application around April 2022 despite having additional training requirements.  For the changes to job duties and schedule, Defendants point to quality concerns, yet the evidence includes a request that a manager "keep [Boettcher] abreast" of issues -- a request the manager refused as "outside of normal procedures."  And with respect to termination, Plaintiff identifies procedural irregularities surrounding her discharge.  Because a jury could find Moore similarly situated, and questions of material fact exist regarding whether sex was a motivating factor for

22

any disparate treatment, summary judgment is denied on Count One as to the post-January 25, 2022, incidents.  *See Bart*, 96 F.4th at 567 (holding a plaintiff may satisfy pretext by showing "membership in a protected class was at least one motivating factor in the employer's adverse action").

  **ii.**  **Hostile Work Environment**

  Defendants' motion for summary judgment on the Title VII hostile work environment claim is granted in full.  An actionable hostile work environment exists only when discriminatory intimidation, ridicule or insult is (1) sufficiently severe or pervasive to alter the conditions of employment, and (2) there is a specific basis to impute the conduct to the employer.  *See Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 228-29 (2d Cir. 2024).  The misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.  *Id*.  Courts assess "all the circumstances," including frequency, severity, whether conduct was threatening or humiliating and whether it interfered with work.  *Id*.  Episodic incidents do not typically suffice.  *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).  A single incident qualifies only if "extraordinarily severe."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

  Even crediting Plaintiff's version of events, the record does not support a finding that the alleged conduct was severe or pervasive enough to create an objectively hostile work environment.  The three sex-based remarks by Vazquez over roughly four months -- "wear pumps," "calm down, girl," and "honey" -- were limited and infrequent, were not physically threatening, and at most were mildly offensive.  The comments did not create a hostile work environment as a matter of law.  *See Cristofaro v. Lake Shore Cent. Sch. Dist.*, 473 F. App'x 28, 30 (2d Cir. 2012) (summary order) (finding that supervisor occasionally commenting on plaintiff's physical appearance, betting other employees about engaging plaintiff in sexually

explicit conversation and "briefly ma[king] contact with the side of her body while standing next to her," *inter alia*, were insufficient to create a hostile work environment); *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."); *Petrisch v. HSBC Bank USA, Inc.*, No. 7 Civ. 3303, 2013 WL 1316712, at *15-16 (E.D.N.Y. Mar. 28, 2013) (finding three age-based insults insufficient for hostile work environment).

The January 25 altercation likewise did not render the environment "extraordinarily severe." Witnesses described a closed-door argument with raised voices, followed by a third-person requirement for future meetings and subsequent revision of Plaintiff's "Interpersonal Relations" rating -- with the explanation that she needed to accept direction. These facts reflect workplace conflict, not "an objectively hostile or abusive work environment." *Moll*, 94 F.4th at 228-29.

Plaintiff's argument that increased scrutiny between September 2021 and March 2022, though facially neutral, compounded the hostility of Vazquez's conduct is also insufficient. Plaintiff points to her limited guidance and training, denial and auditing of overtime, the inquiry after a GPS speed alert, increased monitoring she received compared to her peers, a suggestion that termination be "seriously considered" and a negative probation report, among other actions. But routine performance management does not convert the episodic remarks into severe or pervasive harassment. *See Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (impatience and harsh tone, refusal to meet, distancing, meeting exclusion, wrongful reprimands, increased reporting requirements and sarcastic comments insufficient); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (wrongful exclusion from

24

meetings, excessive criticism, refusal to answer work-related questions, arbitrarily imposed duties, throwing books and rude emails insufficient).  That Plaintiff considered these measures harsh and reported them as such does not change the analysis.

Ultimately, regardless of Plaintiff's sincerely held belief that her treatment was unfair, "Title VII does not set forth a general civility code for the American workplace."  *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 113 (S.D.N.Y. 2022).  Because the record lacks evidence from which a reasonable jury could find harassment "sufficiently severe or pervasive to alter the conditions of [her] employment," Plaintiff's Title VII hostile work environment claim fails as a matter of law.  *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019); *Moll*, 94 F.4th at 228-29.  Count Three is dismissed.

### iii.   Retaliation

Plaintiff's retaliation claim under Title VII survives summary judgment.  Title VII bars an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  As with discrimination claims, retaliation claims are assessed "using the burden-shifting framework from *McDonnell Douglas*."  *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015).  "To make out a *prima facie* case of retaliation [under Title VII], a plaintiff must make four showings: that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity."  *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).

### a. Conduct Before January 25, 2022

Before January 25, 2022, Plaintiff complained to Shelhamer about Vazquez's "pumps" comment and alleged hostile environment, inadequate training and disparate treatment. It is assumed, without deciding, that these complaints were protected activity and that the challenged conduct in the same period was materially adverse -- i.e., the October denial of Plaintiff's overtime request and COVID-related overtime exclusions, the October speed inquiry, the January hours audit and follow-up texts and the initial draft of Probation Report 1.

Even assuming Plaintiff satisfied her *prima facie* showing, causation is lacking under third step of *McDonnell Douglas* for Vazquez's conduct before January 25, 2022, because there is no evidence that Vazquez was aware of Plaintiff's complaints. Title VII retaliation claims require but-for causation. *Lively v. WAFRA Inv. Adv. Grp.*, 6 F.4th 293, 304 (2d Cir. 2021). A plaintiff may satisfy causation even if the decisionmaker lacked knowledge of the protected activity if the decisionmaker acted at the behest of a superior with knowledge. *Summa*, 708 F.3d at 127. The record lacks evidence (1) that Vazquez knew of Plaintiff's complaints to Shelhamer at the time Vazquez undertook the actions Plaintiff claims were retaliatory, or (2) that Shelhamer directed or influenced Vazquez's conduct. Moore likewise received "pushback" on overtime and received the same hours audit, further undercutting any inference of retaliation.

As to any retaliation by Shelhamer, who was aware of Plaintiff's complaints, the two incidents involving Shelhamer (i.e., the October speed inquiry and his largely organizational edits to the first draft of Probation Report 1) were not materially adverse actions. The evidence does not support that either instance was "harmful to the point that it could well dissuade a reasonable worker" from reporting discrimination. *Moll*, 94 F.4th at 239. The record does not show any clear repercussions from the speed inquiry, and Plaintiff was not even aware of

Shelhamer's edits to her draft probationary report before the post-confrontation revisions. *Compare id.* at 244-45 ("A rational juror could find . . . that . . . being required to spend more than 60 extra hours driving . . . more than 4,000 extra miles every month, just to get to and from her job, could well dissuade . . . a mother with young children from [reporting] discrimination."), *with Moy v. Perez*, 712 F. App'x 38, 40-41 (2d Cir. 2017) (summary order) (finding no materially adverse actions where plaintiff alleged "(1) his supervisors 'micromanaged' him and subjected his work to 'heightened scrutiny'; (2) he received a less positive performance evaluation than he had in past years; and (3) his supervisors did not follow several . . . protocols in bestowing that evaluation"). On this record, no reasonable jury could find that Plaintiff's complaints were the but-for cause of Defendants' pre-January 25, 2022, conduct.

### b. Conduct After January 25, 2022

Defendants' post-January 25 conduct raises a triable issue as to retaliation. The parties do not dispute that, after January 25, 2022, Plaintiff engaged in protected activity, including her emails to Shelhamer and the subsequently filed OER complaint about the January 25, 2022, incident; Plaintiff's February 10, 2022, OER complaint alleging discrimination/retaliation tied to her evaluation; Plaintiff's February 11, 2022, workplace-violence report to BER, and her union grievances. The parties also do not dispute that DOH was aware of this conduct, and that termination is an adverse action. *See Summa*, 708 F.3d at 125-26. DOH has articulated a non-retaliatory reason for the discharge -- performance and resistance to supervision. Accordingly, the next step of the *McDonnell Douglas* analysis is pretext. *See Bassi v. New York Med. Coll.*, No. 19 Civ. 7542, 2023 WL 2330478, at *9 (S.D.N.Y. Mar. 2, 2023), *aff'd*, 2024 WL 3717317 (2d Cir. Aug. 8, 2024) (noting Second Circuit caselaw permits "skip[ping] to the final step in the *McDonnell Douglas* analysis [where] the employer has articulated a legitimate . . . reason for the

adverse employment action"). On this record, a reasonable juror could find that retaliatory animus was the but-for cause of the adverse action.

First, a reasonable jury could find retaliatory intent based on temporal proximity. Although Plaintiff was terminated on July 18, 2022, the wheels were in motion by April 26, when Shelhamer emailed BER seeking "Assistance for [Plaintiff's] Termination Process" -- roughly ten weeks after her February 2022 complaints. The Second Circuit has held that retaliatory intent could be found based on similar or longer intervals.. *See Banks*, 81 F.4th at 278 (four months); *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020) (five months); *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 555 (2d Cir. 2001) (four months). While Defendants rely on the "temporal gap" between Plaintiff's first complaints and her ultimate termination, this argument is unpersuasive. Plaintiff's repeated complaints alleging discrimination, hostile work environment and retaliation continued through the spring of 2022, including during the month prior to her termination.

Second, a jury could view Defendants' conduct between January 2022 and July 2022, as a "drumbeat of retaliatory animus," which can bridge the gaps between Plaintiff's protected activity and her ultimate termination. *Duplan v. City of New York*, 888 F.3d 612, 626 (2d Cir. 2018); *see Patane v. Clark*, 508 F.3d 106, 116-17 (2d Cir. 2007) (per curiam) ("Plaintiff's claim of causal connection is not based only -- or even primarily -- on temporal proximity. Instead, [p]laintiff alleges . . . [her supervisors] conspir[ed] to drive her out of her job."). This conduct includes: (1) the recall of Plaintiff's state vehicle soon after her complaints, despite an asserted long-standing shortage, with all other investigators retaining their vehicles and testimony reflecting an inconsistent justification (e.g., that Plaintiff "surrendered" the vehicle because she no longer wished to do fieldwork); (2) failure to provide the paperwork Plaintiff needed to

complete her pistol-permit application, contrasted with Moore submitting his around April 2022 despite additional training requirements; (3) counseling memoranda issued close in time to complaints, including discipline for months-old conduct that others testified normally did not lead to reprimands; (4) diminished responsibilities and revocation of Plaintiff's telecommuting/alternative work schedule, coupled with a request that a manager "keep [Boettcher] abreast" of issues with Plaintiff's reports -- which the manager refused as "outside of normal procedures"; (5) the May 17, 2022, PIP's thin detail followed closely by a termination push, supporting an inference that the PIP served to paper the file rather than provide a remediation plan; and (6) procedural irregularities surrounding Plaintiff's discharge. The record reflects no contemporaneous justification for several of these events.

Taken together -- and drawing all reasonable inferences for Plaintiff -- this evidence creates a triable dispute as to whether Defendants' stated reasons were the cause of Plaintiff's termination or pretext for a termination that would not have occurred but for retaliatory intent. The jury might also find that intervening actions taken after January 25, 2022, were themselves retaliatory. Summary judgment is therefore denied on Count Two to the extent Plaintiff's Title VII retaliation claim rests on post-January 25, 2022, events.

## B.    City and State Claims

Plaintiff asserts that the Individual Defendants are liable under NYSHRL and NYCHRL. As a preliminary matter, Plaintiff presented neither argument nor evidence that the unnamed persons "who aided and abetted the unlawful conduct of the named Defendants" listed in the caption engaged in illegal conduct. Accordingly, summary judgment is granted as to John and Jane Doe. *See Feingold*, 366 F.3d at 157. The city and state claims against the named Individual Defendants are addressed below.

###### i.   NYSHRL Claims

NYSHRL proscribes discrimination "because of an individual's age, race, . . . color, national origin, . . . [or] sex"; prohibits subjecting an employee to a hostile work environment on those bases; and forbids retaliation for opposing or complaining about such practices.  N.Y. Exec. Law §§ 296(1), (7).  Defendants argue, as a threshold matter, that Plaintiff's NYSHRL claims cannot proceed because the Individual Defendants are not "employers" and because aiding and abetting liability requires a predicate NYSHRL finding against the employer, which is unavailable here due to sovereign immunity.

Courts are split on whether Eleventh Amendment immunity that bars an NYSHRL claim against a state employer also forecloses § 296(6) aider-and-abettor liability against individual employees; but over the last three years, more decisions have allowed § 296(6) claims to proceed notwithstanding employer immunity.  *Compare Weems v. New York*, No. 23 Civ. 6305, 2024 WL 4150397, at *14 (W.D.N.Y. Sept. 10, 2024) (allowing § 296(6) claim despite immunity); *Dawkins v. State Univ. of N.Y. at Cortland*, No. 23 Civ. 1163, 2024 WL 3377938, at *7 (N.D.N.Y. July 11, 2024) (same); *Huffman v. Brooklyn Coll.*, No. 20 Civ. 6156, 2022 WL 43766, at *3 (E.D.N.Y. Jan. 5, 2022) (same), *with Marshall v. Westchester Med. Ctr. Health Network*, No. 22 Civ. 7990, 2024 WL 665200, at *10 (S.D.N.Y. Feb. 16, 2024) (dismissing for lack of predicate); *Matsko v. New York*, No. 18 Civ. 8572022, 2022 WL 137724, at *13 (N.D.N.Y. Jan. 14, 2022) (same); *Livingston v. City of N.Y.*, 563 F. Supp. 3d 201, 256-58 (S.D.N.Y. 2021) (same).  The Second Circuit signaled, but did not squarely hold, that individual liability survives an employer's Eleventh Amendment immunity when the court held a state employer immune but still analyzed individual liability under the NYSHRL/NYCHRL.  *See Feingold*, 366 F.3d at 149, 158-59; *see also Henry-Offor v. City Univ. of N.Y.,* No. 11 Civ. 4695, 2012 WL 2317540, at *5 (S.D.N.Y. June 15, 2012) (stating that *Feingold* "obliquely" resolved

30

the issue).  Allowing such claims to proceed conforms with the general rule that a procedural bar

to suing an employer does not preclude individual-capacity claims, and that dismissal of the

employer defeats aiding and abetting liability only when the employer is cleared on the merits.

*See Johnson v. Cnty. of Nassau*, 82 F. Supp. 3d 533, 537-38 (E.D.N.Y. 2015) (noting that "a

procedural bar" to employer liability does not prevent individual capacity claims, unless the

claims against the employer were dismissed on the merits); *Daniels v. Wesley Gardens Corp.*,

No. 10 Civ. 6336T, 2011 WL 1598962, at *3 (W.D.N.Y. Apr. 27, 2011) (adopting the same

reasoning); *see also Bonaffini v. City Univ. of N.Y.*, No. 20 Civ. 5118, 2021 WL 2895688, at *3-4

(E.D.N.Y. July 9, 2021) (same); *accord Dawkins*, 2024 WL 3377938, at *7.

   The argument that all NYSHRL claims must be dismissed for lack of employer status is

therefore rejected.  The NYSHRL sex discrimination, hostile work environment and retaliation

claims survive, but are narrowed consistent with the analysis below.

### a.  Sex Discrimination

   Consistent with the federal analysis, a reasonable jury could find sex-based disparate

treatment for certain post-January 25, 2022, actions.  NYSHRL disparate treatment claims are

analyzed under the same *McDonnell Douglas* burden-shifting framework as Title VII, so the

same inquiry applies here.  *Jones v. City of New York*, No. 22-1867, 2023 WL 6205630, at *1 (2d

Cir. Sept. 25, 2023) (summary order); *accord Gordon-Mallett*, 2024 WL 1513910, at *9.

Specifically, post-January 25, 2022, conduct such as the (1) vehicle recall, (2) restriction to desk

duty/data entry, (3) revocation of Plaintiff's alternate work schedule, (4) withholding the pistol-

permit paperwork and (5) Plaintiff's termination create triable issues of fact.

   Notably, the surviving discrimination theory turns on comparator treatment, as explained

above, not on Vazquez's remarks.  On this record, the employer is the principal wrongdoer, and

each Individual Defendant is alleged to have "actually participate[d]" in the employer's course of

conduct that produced the disparity.  *See Feingold*, 366 F.3d at 157-58.  A reasonable jury could

find personal involvement, for example, where Shelhamer directed the vehicle recall; Boettcher

limited Plaintiff to desk-duty/data-entry work and revoked her alternate schedule; Vazquez (and

later supervisors) withheld her pistol-permit Letter of Necessity; and Vinciguerra edited the June

2022 probation addendum and signed the probation reports culminating in termination.  Such a

theory avoids the "you cannot aid and abet your own violation" problem, because no Defendant

is cast as the primary wrongdoer; DOH is the principal and the individuals allegedly aided and

abetted the violation through their participation.  *Cf. Hardwick v. Auriemma*, 983 N.Y.S.2d 509,

512-13 (1st Dep't 2014) ("an individual cannot aid and abet his or her own violation of the

Human Rights Law"); *Strauss v. New York State Dep't of Educ.*, 805 N.Y.S.2d 704, 709 (2d

Dep't 2005) ("Where no violation . . . by another party has been established . . . an individual

employee cannot be held liable for aiding or abetting such a violation.  In other words . . .

individuals cannot be held liable . . . for aiding and abetting their own violations."); *Baptiste v.

CUNY*, 680 F. Supp. 3d 415, 427 (S.D.N.Y. 2023) (dismissing aiding and abetting theory against

principal violator).  The NYSHRL sex discrimination claim survives to the extent it is premised

on post-January 25, 2022, conduct, and may proceed against each Individual Defendant to the

extent of that Defendant's personal involvement.

   b.  **Hostile Work Environment**

   Unlike its federal counterpart which is dismissed because the offensive conduct was not

severe or pervasive, the NYSHRL hostile work environment claim survives.  Following post-

2019 amendments, a plaintiff need only establish that she was "treated less well than other

employees because of [a protected characteristic]," and the statute expressly rejects any

requirement that the conduct be "severe or pervasive."  N.Y. Exec. Law § 296(1)(h).  The statute

also provides an affirmative defense where the conduct amounts only to "petty slights or trivial

inconveniences."  *Id*.  The amended standard tracks the "treated less well" standard of the

NYCHRL, although NYCHRL cases interpret the city law, not the state statute.  *See Mihalik v.

Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-10 (2d Cir. 2013) (NYCHRL);

*Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 41 (1st Dep't 2009) (NYCHRL).

Courts applying the amended NYSHRL accordingly ask whether a reasonable jury could find

that the alleged harassment subjected the plaintiff to inferior terms, conditions, or privileges of

employment because of a protected characteristic and deny summary judgment when that

showing is met.  *See Zimpfer v. Hilbert Coll.*, No. 21 Civ. 231, 2025 WL 1758266, at *21

(W.D.N.Y. June 25, 2025) (NYSHRL); *Maryse v. PFNY LLC*, No. 23 Civ. 891, 2024 WL

3087533, at *9 (S.D.N.Y. June 20, 2024) (NYSHRL); *Wheeler v. Praxair Surface Techs., Inc.*,

694 F. Supp. 3d 432, 454 (S.D.N.Y. 2023) (NYSHRL).

 Here, a jury crediting Plaintiff's account could find that the pattern of disparate treatment

-- as detailed in relation to the federal discrimination claim -- resulted in Plaintiff "being treated

less well on account of [her sex]."  *Wheeler*, 694 F. Supp. 3d at 455.  Whether the conduct

created inferior terms, conditions or privileges, as opposed to petty slights or trivial

inconveniences, is a question of material fact precluding summary judgment.  *See id.* (denying

summary judgement in analogous context); *Maryse*, 2024 WL 3087533, at *9 (S.D.N.Y. June 20,

2024) (same).  For these reasons, Plaintiff's NYSHRL hostile work environment claim survives,

to the extent it relies on post-January 25, 2022, conduct -- consistent with the surviving disparate

treatment claims.

c.  **Retaliation**

Plaintiff's NYSHRL retaliation claim proceeds for the same reasons as the federal claim.
The threshold sovereign immunity split identified for § 296(6) does not apply to retaliation
claims, as NYSHRL "makes it unlawful for 'any person' to retaliate." *Nezaj v. PS450 Bar &
Rest.*, 719 F. Supp. 3d 318, 330 (S.D.N.Y. 2024) (citing N.Y. Exec. Law § 296(7)); *Everett v.
N.Y.C. Dep't of Educ.*, No. 21 Civ. 7043, 2023 WL 5629295, at *11, *14 (S.D.N.Y. Aug. 31,
2023).  On this record, a reasonable jury could find that each Individual Defendant personally
participated in conduct that, if retaliatory, could give rise to liability.  For example, Vazquez
failed to provide Plaintiff her Letter of Necessity for a pistol.  Shelhamer recalled Plaintiff's
vehicle.  Boettcher revoked Plaintiff's alternate work schedule, issued counseling memoranda
and instituted the PIP.  Vinciguerra revised Plaintiff's June 2022 probation addendum and
allegedly furthered procedural irregularities in Plaintiff's termination process.  These disputed
events are sufficient to create triable issues as to retaliatory motive and personal involvement.
Accordingly, Counts Five, Seven and Nine survive to the extent they concern conduct post-
dating January 25, 2022.

ii.  **NYCHRL Claims**

Finally, Plaintiff's NYCHRL claims survive.  NYCHRL claims are analyzed "separately
and independently from any federal and state law claims," the interpretation of which "can serve
only 'as a floor below which the [NYCHRL] cannot fall.'"  *Mihalik*, 715 F.3d at 109; *accord
Williams*, 61 F.4th 55, 69 (2d Cir. 2023).  Under this more liberal standard, Plaintiff must show
she was "subjected to unequal treatment *because of* a protected characteristic."  *Nnebe v. City of
New York*, No. 22 Civ. 3860, 2023 WL 2393920, at *10 (S.D.N.Y. Jan. 30, 2023), *report and
recommendation adopted*, 2023 WL 2088526 (S.D.N.Y. Feb. 17, 2023) (discrimination);
*Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 8 (2d Cir. 2017) (summary order) (hostile work

environment); *Gordon-Mallett*, 2024 WL 1513910, at *16 (discrimination, hostile work environment and retaliation).  It follows that the same triable issues as Plaintiff's NYSHRL claims exist on the NYCHRL sex discrimination, hostile work environment and retaliation for conduct after January 25, 2022.  *See Gordon-Mallett*, 2024 WL 1513910, at *19 (under the NYCHRL, "plaintiff can satisfy her ultimate burden by show[ing] that retaliation played *any* role in the defendants' alleged adverse actions").[5]  For these reasons, Counts Six, Eight and Ten survive.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on Count Three is **GRANTED**.  The motions on Counts One, Two, Five, Six, Seven, Eight, Nine and Ten are **GRANTED** to the extent they concern conduct pre-dating January 25, 2022, and **DENIED** as to conduct post-dating January 25, 2022.  Defendants' Motion to Strike Plaintiff's expert, Elizabeth Gramigna, is **DENIED**, without prejudice, as moot; this Opinion does not rely on Gramigna's opinions or testimony for summary judgment.  Defendants may renew their motion should Plaintiff decide to call Gramigna at trial.

For clarity, the surviving claims against DOH are Count One (Title VII sex discrimination) and Count Two (Title VII retaliation) -- both limited to post-January 25, 2022, conduct.  The surviving claims against the Individual Defendants are Count Five (NYSHRL sex

---

[5] While Vinciguerra argues that he acted solely in his official capacity and that sovereign immunity bars any NYCHRL liability, not so.  Employees can incur liability under NYCHRL for "their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct."  *Doe v. Bloomberg, L.P.*, 167 N.E.3d 454, 460 (N.Y. 2021); *Nezaj*, 719 F. Supp. at 318.  Sovereign immunity cannot shield Vinciguerra where, as here, a reasonable jury could find personal involvement in the alleged violations.

discrimination), Count Six (NYCHRL sex discrimination), Count Seven (NYSHRL retaliation) and Count Eight (NYCHRL retaliation), all limited to post-January 25, 2022, conduct.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 125, 129 and 157, and to terminate John and Jane Doe as defendants.

Dated:  September 25, 2025
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**